NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                    :
DEVIN CONNELLY,                     :
                                    :   Civil Action No. 13-3966 (RMB)
            Petitioner,             :
                                    :
     v.                             :   **MEMORANDUM OPINION**
                                    :
BUREAU OF PRISONS et al.,           :
                                    :
            Respondents.            :
_____:

This Section 2241 matter comes before the Court upon Petitioner's filing of his second amended petition, Docket Entry No. 9, which prompted restoration of this matter to the Court's active docket. See Docket Entry No. 10.

Petitioner, a twenty-seven-year-old federal inmate currently confined at the FCI Berlin, Berlin, New Hampshire, see http://www.bop.gov/inmateloc/, has an extensive criminal history. On October 24, 2007, Petitioner was convicted in North Carolina of possession of cocaine with intent to distribute. See United States v. Connelly, Crim. Action No. 08-0543 (N.D.N.Y.), Docket Entry No. 1, at 7. Less than a year later, on September 17, 2008, he, along with five co-defendants, was charged with a conspiracy involving a large drug dealing and money laundering operation. See id. at 1-8.[1] While Petitioner continuously

---

[1] Petitioner pled guilty to the controlled substance charge conceding that he was "accountable for at least 800 pounds of

profited from illegal dealing in controlled substances, his record indicates that he himself never abused drugs or alcohol. See Instant Matter, Docket Entry No. 9, at 11, 13, 17-19 (Petitioner's responses to an anger management questionnaire where, reflecting on the events of 2003 and 2004, and prior, he stated that he "infrequently" consumed three to four beers (or three or four drinks) during some weekends but he never suffered of any overdose or hallucinations, never used drugs, never experienced isolation as a "result of alcohol or substance abuse," never had to undergo a detox treatment and, altogether, considered the fact of him not using drugs his strength). He has consistently insisted that, as far as drugs and alcohol were concerned, he did "not have a problem." Id. at 17-19.

Consequently, Petitioner remained drug and alcohol abuse free. Even at the time when he was engaged in the above-mentioned large drug dealing and money laundering scheme, he still stayed off drugs and alcohol. His pre-sentencing memorandum in United States v. Connelly, Crim. Action No. 08-0543 (N.D.N.Y.), stated:

> [Petitioner] rarely drinks alcohol and[,] despite a history that contains drug-related offenses, he does not . . . use marihuana or other controlled substances, nor does he have a history of substance abuse. A psycho-social evaluation conducted [three months after Petitioner was indicted on the drug dealership and

---

marijuana." United States v. Connelly, Crim. Action No. 08-0543 (N.D.N.Y.), Docket Entry No. 152, at 2.

> money laundering charges] concluded that [Petitioner] had a low probability of having a substance abuse dependence disorder [in the future], and each of [his] four drug tests administered while he has been on pretrial supervision by the United States have had negative results.

Id., Docket Entry No. 128, at 3.

The docket in United States v. Connelly, Crim. Action No. 08-0543 (N.D.N.Y.), indicates that Petitioner was in pretrial supervision for more than a year and a half: that, in and by itself, verified that he remained drug and alcohol free at least during that period. See generally, id., Docket.

On July 22, 2010, Petitioner was sentenced to the term of seventy eight months and directed to self-surrender to the Bureau of Prisons ("BOP") custody. See id., Docket Entries No. 160 and dated July 22, 2010. The judgment of conviction did not recommend a treatment for drug/alcohol abuse. See id. Docket Entry No. 161 (a pre-printed judgment form containing a generic requirement that all inmates should submit to drug testing during their incarceration and probation periods). Petitioner became is expected to be released on March 31, 2016. See http://www.bop.gov/inmateloc/.

Upon his entry into BOP custody and his arrival at FCI Fort Dix, Fort Dix, New Jersey, Petitioner was informed about the BOP's Residential Drug Abuse Treatment Program ("RDAP").

In 1990, Congress charged the BOP with making available "appropriate substance abuse treatment for each prisoner the

Bureau determines has a treatable *condition of substance addiction or abuse*." 18 U.S.C. § 3621(b) (emphasis supplied). To carry out that requirement, as part of the 1994 Violent Crime Control and Law Enforcement Act, Congress amended § 3621 to require the BOP, subject to the availability of appropriations, to provide residential substance abuse treatment for all "eligible" prisoners. See 18 U.S.C. § 3621(e)(1)(C). An "eligible" prisoner was defined as the one who was "determined by the Bureau of Prisons to *have a substance abuse problem*," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii) (emphasis supplied). To give the inmates suffering from the ill of drug and alcohol addiction an incentive to participate and successfully complete such residential treatment program, the statute provided an incentive: it stated that the prisoners convicted of a nonviolent offense may have their prison terms reduced up to one year in the event they completed the RDAP program. See 18 U.S.C. § 3621(e)(2). Hence,

> the goal of Section 3621(e)(2) was not to offer a reward, in the form of reduced prison sentence, to those offenders who committed their criminal acts while abusing controlled substances, but to offer a life-straightening opportunity to those persons who, upon their entry into a "controlled [prison] environment" suffer[ed] of the ills of drug abuse. In other words, the sole purpose of Section 3621(e)(2) is rehabilitation of those individuals who suffer from drug abuse at the time - or shortly prior to the time - when they enter a "controlled environment:" this purpose is not related to the problem of substance

> abuse that the offenders might [eventually develop in the future or might] have had sometime in the past but managed to conquer prior to their entry in a "controlled environment."  See, generally, Reuven Cohen, Treating and Releasing the Mule: the Rational, Non-discriminatory Provisions of 18 U.S.C. 3621, 7 S. Cal. Interdis. L.J. 255 (1998) (discussing the history and legislative challenges of RDAP and noting that the final goal of RDAP focuses "on skills the inmate will need to handle and anticipate problems which may emerge upon reintegration to the community through a halfway house, home confinement, or directly into the general population").

Anderson v. Schultz, 2010 U.S. Dist. LEXIS 124622, at *8-9, n.3 (D.N.J. Nov. 23, 2010).

Acting upon that statutory mandate, the BOP promulgated regulations at 28 C.F.R. § 550.53.  The regulation requires that "[i]nmates must have a verifiable substance use disorder." 28 C.F.R. § 550.53(b)(1).  "The Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the criteria set forth in paragraph (b) of this section."  28 C.F.R. § 550.53(e).  The BOP application of this regulation is contained in Program Statement 5330.11, which states that, "[t]o qualify for admission, prisoners must [h]ave a *documented and verifiable substance abuse disorder* consistent with the American Psychiatric Association per the DSM[; d]isorder must be within 12-months prior to arrest." http://www.fd.org/docs/select-topics---bop/BOP-RDAP-Chart-6-14-10-modified.pdf (emphasis supplied).

> [Such required] documentation can be shown through (a) [the statement made by] probation or parole officer; (b) [the statement made by] substance abuse treatment

5

      provider; (c) multiple recent DUI/DWI convictions; [or, in alternative,] if prisoners lacks verifying documentation but have physical proof, such as track marks or abscesses, they may consent to drug treatment staff receiving medical staff's examination results.

Id.[2]

    Petitioner could not obtain RDAP enrollment because his record indicated that he did not have any drug/alcohol abuse problem during the twelve months preceding his entry into BOP custody (i.e., when he was arrested upon his self-surrender and began serving his United States v. Connelly, Crim. Action No. 08-0543 (N.D.N.Y.), prison term), or even during his entire life.

    Hoping to overcome that obstacle, Petitioner first engaged in administrative proceedings: there, he argued that he was a drug/alcohol addict but he could not produce the required documentation in support of his position. Having his request for

---

[2] The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, "DSM-IV," published by the American Psychiatric Association, defined Substance Abuse or Substance Dependence as a cluster of certain listed symptoms in the same twelve-month period. The first twelve-month period following Dependence or Abuse is designated Early Remission. The specifiers of Early Remission do not apply if the individual is in a "controlled environment." Examples of a "controlled environment" include "closely supervised and substance-free jails, therapeutic communities, or locked hospital units." DSM-IV at 175-183. In contrast, probation or pretrial supervision cannot qualify as "controlled environment." See Anderson, 2010 U.S. Dist. LEXIS 124622, at *14-15. Thus, an inmate who was in pretrial supervision prior to his incarceration must establish, by official documents (such as the inmate's pre-sentencing report, not the inmate's self-serving statements) that he was abusing drugs or alcohol while awaiting incarceration: in the event the inmate is seeking RDAP enrollment. See id.

RDAP enrollment denied by the warden and then by the BOP Regional Office (on the grounds that review of Petitioner's documents and all other relevant reliable data available failed to indicate that Petitioner suffered from drug/alcohol abuse), Petitioner abandoned his administrative efforts and commenced the instant matter.  See Docket Entries Nos. 1, 3 and 9 (Petitioner's original and amended pleadings detailing his displeasure with denial of his request for RDAP enrollment).

Upon reviewing Petitioner's claims, this Court explained to Petitioner that, first, Petitioner's administrative exhaustion efforts had to be completed.  Second, this Court pointed out that the BOP's decision to deny Petitioner RDAP enrollment could qualify as an abuse of the agency's discretion (and, thus, warrant habeas relief) only if: (a) Petitioner had *presented* the BOP with the documentation actually establishing his addiction in accordance with the requirements posed by Program Statement 5330.11; and (b) the BOP ignored/misconstrued that documentation and denied him RDAP enrollment in error.  Third, this Court stressed that Petitioner could not plead his self-serving claims about hypothetical documentation that might exist somewhere: Petitioner had to plead the facts showing that the BOP was actually presented with the appropriate documentation and abused its discretion by finding that it insufficient.  See Instant Matter, Docket Entry No. 7 (detailing the same at length).  With

that, this Court allowed Petitioner an opportunity to replead his claim the third time: by stating such facts, if they existed.

In response to this Court's guidance, Petitioner submitted his second amended pleading, see Docket Entry No. 9, maintaining that: (a) he requested and obtained the needed documentation; and (b) exhaustion with the Central Office of the BOP should be excused as futile because Petitioner was certain that the Central Office would also deny his request for RDAP enrollment.[3]

The rationale of Petitioner's position is not immediately apparent to this Court: the documentation Petitioner requested and obtained is the very set of his responses to the anger management questionnaire showing that, during 2003, 2004 and

---

[3] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." See 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate dissatisfied with the warden's response may submit a BP-10 Appeal to the Regional Director of the BOP within twenty days of the date the warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within thirty days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

prior, Petitioner did *not* suffer from any drug/alcohol addition. See id.  Those responses are irrelevant.

Moreover, Petitioner's position that exhaustion with the Central Office would be futile is not persuasive.  To the extent Petitioner meant to assert that, in light of the absence of the required documentation showing his addiction, the Central Office is likely to arrive at the same conclusion that the Regional Office reached (*i.e.*, that Petitioner was not entitled to RDAP enrollment), that possibility cannot render the BOP's conclusion erroneous or the exhaustion efforts futile.  Analogously, to the extent Petitioner meant to continue with his speculation that the required documentation might be "somewhere," Petitioner errs in his position that exhaustion with the Central Office would be futile.  If Petitioner can produce that required documentation for the agency's review, and has his request for RDAP enrollment denied by all levels of the BOP, his exhaustion of administrative remedies would create the record indispensable for the purposes of § 2241 review.

For the foregoing reasons, the second amended petition will be dismissed as facially unexhausted.  Such dismissal will be without prejudice to raising Petitioner's challenges in a § 2241 matter once he exhausts his administrative remedies.[4]

---

[4]  In the event Petitioner duly presented the required documentation to the BOP and exhausted his claims at all levels

9

An appropriate Order follows.

                                    s/Renée Marie Bumb
                                    **RENÉE MARIE BUMB**
                                    **United States District Judge**

Dated: January 23, 2015

---

of the BOP by the date of entry of the Order accompanying this Opinion, Petitioner may file his third amended pleading detailing that documentation and his exhaustion efforts. Correspondingly, out of an abundance of caution, this Court will retain its jurisdiction over this matter to ensure Petitioner's opportunity to so replead. This Court, however, cautions Petitioner not to construe the narrow leave to replead as an invitation to continue Petitioner's attempts to convince this Court that he should be entitled to RDAP enrollment if he did not produce the required documentation to the BOP or if he did not exhaust his administrative remedies at all levels of the BOP. If Petitioner continues filing such submissions, those submissions would be construed as an abuse of the equitable nature of the writ, and sanctions might be applied to Petitioner, if warranted.